**Gordon P. GETTY, Petitioner,**

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Respondent.**

**No. 86–1387.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1986.

Decided Nov. 21, 1986.

Roger W. Mehle, Washington, D.C., for petitioner.

William K. Black, Sr. Associate Gen. Counsel, FSLIC, with whom Harry W. Quillian, Gen. Counsel and Colleen B. Bombardier, Atty., FSLIC, Washington, D.C., were on brief for respondent.

Before SILBERMAN and WILLIAMS, Circuit Judges, and JAMESON,* Senior District Judge.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Petitioner Gordon P. Getty challenges Federal Savings and Loan Insurance Corporation ("FSLIC") orders [1] awarding National Permanent Bank ("NPB") to Citicorp, following a bidding procedure set out in the Emergency Thrift Acquisition provisions of the Garn-St Germain Depository Institutions Act of 1982 ("Act"), 12 U.S.C. § 1730a(m) (1982).[2] We find two legal errors in FSLIC's orders. First, FSLIC authorized Citicorp to acquire NPB without considering a factor that subsection (3)(B) required FSLIC to consider: the "priorities" of the offerors. Second, FSLIC failed to permit Getty to submit a new offer for NPB in conformity with the requirements of subsection (3)(A). We therefore grant the petition, set aside the orders and remand the case to FSLIC with instructions to solicit new bids from Getty and Citicorp in a manner consistent with this opinion.

### I.

NPB was a federally-chartered, FSLIC-insured mutual savings bank (and, as such,

---

* Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

1. FSLIC's orders were in the form of Federal Home Loan Bank Board ("FHLBB") resolutions 86–590 and 86–661. The FHLBB is the operating head of FSLIC, and the chartering and regulatory authority for federally-chartered thrift institutions. 12 U.S.C. § 1725 (1982).

2. Subsequent to FSLIC's action, section 1730a(m) expired pursuant to the sunset provisions of section 141(a)(7) of Pub.L. No. 97–320.

a "thrift institution" [3]) located in the District of Columbia. It experienced severe financial difficulties, and in 1985 the institution's Board of Directors adopted a consent resolution putting NPB under the control of the Federal Home Loan Bank Board ("FHLBB"). As NPB continued to suffer financial setbacks, FSLIC was faced with two options: liquidating the institution and paying out a substantial sum on the insured deposits, or finding an acquirer. Anticipating the financial assistance that FSLIC would have to pay an acquirer would be less expensive to FSLIC than the cost of liquidation, FSLIC chose to solicit bids from several parties—including Getty and Citicorp. Getty is an individual, resident in California, whereas Citicorp, headquartered in New York, is a bank holding company and (as a result of previous acquisitions of troubled savings and loan associations) a savings and loan holding company. Both Getty and Citicorp submitted bids on the deadline, February 28, 1986. On March 6, FSLIC calculated the present value cost to it of Citicorp's bid at $52 million and Getty's bid at $124 million. Citicorp's offer, however, was conditioned on obtaining permission from the FHLBB to convert NPB into a commercial bank if Citicorp were otherwise authorized to obtain a commercial banking operation in the District of Columbia. FSLIC accepted neither offer, but informally invited both Getty and Citicorp to improve their offers.

Getty submitted improved offers twice, on April 14 and again on May 2, although he refused a May 7 request by FSLIC to further improve his offer. FSLIC calculated the cost of Getty's final offer to be $59 million. On June 5, Citicorp wrote a letter to FSLIC repeating its February 28th offer but dropping the condition that it be allowed to convert NPB into a commercial bank. Aware of Citicorp's new offer, Getty telephoned FSLIC on June 10 and requested an opportunity to submit a new

offer in light of that development. FSLIC refused.

On June 16, finding Citicorp's offer "substantially more favorable" than any other bid, FSLIC approved the Citicorp June 5th offer. Based on FSLIC's calculations, Getty's May 2nd offer would have cost FSLIC 13.5 percent, or $7 million, more than Citicorp's. Getty filed a request on June 18 asking FSLIC to reconsider the decision and permit him to submit a new offer pursuant to subsection (3)(A) of the Act. FSLIC, on June 26, denied the request.

The next day, Getty filed a petition asking this court to review FSLIC's orders. Getty also asked us to grant an immediate stay of FSLIC's orders, and establish a schedule for expedited consideration of the petition for review. FSLIC opposed the stay, arguing that "such relief would seriously jeopardize the ability of the Bank Board and FSLIC to protect the depositors of National Permanent, to preserve public confidence in the savings and loan industry and to safeguard FSLIC's insurance fund." Concluding that the public interest weighed heavily in favor of "expeditious consummation of the agreement," but without endorsing FSLIC's position, the court denied Getty's motion on July 2. By order of July 10, however, the court set an expedited briefing schedule.

Citicorp was required to gain approval of its acquisition of NPB from the Federal Reserve Board as well as FSLIC. The "Fed" approved the transaction on August 1 and refused a request by Getty for a stay on the grounds that it was not the proper forum to challenge FSLIC's bidding procedures—but, noting Getty's position before this court, took no position on the merits of Getty's challenge.

This court has jurisdiction to review FSLIC's orders by virtue of 12 U.S.C. § 1730a(k).[4] Review is to be had as provid-

---

**3.** Federal savings banks, as well as federal savings and loan associations, are "thrift institutions" under 12 U.S.C. § 1464(a) (1982).

**4.** FSLIC argues Getty lacks standing to bring this petition, since his offer apparently expired

two hours before the conclusion of the June 16 meeting at which Citicorp's offer was accepted. The transcript of the meeting shows, however, that FSLIC treated the offer as if it were still open—and rejected it.

ed in the Administrative Procedure Act, 5 U.S.C. §§ 701–706, but our remedial power is more explicit: we may "affirm, modify, terminate, or set aside, in whole or in part," FSLIC's order. 12 U.S.C. § 1730a(k) (1982). Our review must be "based on the full administrative record that was before [FSLIC] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). Section 1730a (k) provides that FSLIC "shall file in the court the record in the proceeding, as provided in section 2112 of title 28," which in turn provides: "The record to be filed in the court of appeals in such proceeding shall consist of the order sought to be reviewed or enforced, the findings or report upon which it is based, and the pleadings, evidence, and proceedings before the agency...." 28 U.S.C. § 2112(b) (1982). FSLIC filed with the court a certified index to the complete administrative record, and provided Getty access to some but not all of the indexed documents.

On July 28, Getty filed an emergency motion to compel production to him of *all* the documents listed in the index. FSLIC's opposition thereto argued the documents Getty had not been shown were either confidential, or privileged and irrelevant. FSLIC proposed to release the confidential documents (which included several intraagency memoranda that influenced FSLIC's decision) to Getty under a protective order, and to make the other documents available to the court only, under seal. On August 5, the court granted FSLIC's request with respect to the protective order, but deferred decision regarding the releasibility of the other documents. FSLIC then filed both categories of documents with the court.[5] Immediately prior to oral argument on September 29, the court released to Getty two documents FSLIC had includ-

ed in the part of the record filed with the court under seal: two intra-agency memoranda, from Angelo Vigna (a FSLIC Supervisory Agent) and from Dan Kaschmitter (Director of FSLIC's Mergers and Acquisitions Division), both to William King (of the FHLBB's Office of General Counsel). We found the memoranda bore directly on an issue in the case, and fell under an exception to the privilege for deliberative intra-agency memoranda, since they were purely factual in nature. *See National Courier Association v. Board of Governors of the Federal Reserve System,* 516 F.2d 1229, 1241–42 (D.C.Cir.1975).

## II.

When FSLIC determines that severe financial conditions threaten the stability of a federally-insured institution,[6] subsection (1) of the Act provides that to lessen the risk to itself, FSLIC "may authorize any company to acquire control" of the institution. 12 U.S.C. § 1730a(m)(1)(A)(i) (1982). The Act creates tension between FSLIC's two roles: insurer and regulator. As an insurer, FSLIC is responsible for protecting over $500 billion in funds deposited in approximately 95 million savings accounts. H.R.Rep. No. 272, 97th Cong., 1st Sess. 14 (1982). Often required to step in to administer failing insured institutions, FSLIC quite naturally wishes maximum flexibility to choose acquirers whose terms provide the least exposure to FSLIC's insurance obligations. An out-of-state financial institution that could not otherwise enter the relevant market—because of functional and geographic legal restrictions—might be willing to present FSLIC the best offer, since it would be buying both the failing institution and an "exception" to present legal restrictions on its own expansion. Indeed, prior to passage of the Garn-St Germain Act, FSLIC had permitted subsidiar-

5. Because the parties have agreed these documents make up the administrative record, the issue whether the intra-agency memoranda included therein are part of the "record of the proceeding" for purposes of 12 U.S.C. § 1730a(k) is not before us.

6. For purposes of the Act, the term "insured institution" covers FSLIC–insured savings and loan associations, building and loan associations, homestead associations, cooperative banks, and federal savings banks, as well as FDIC-insured federal savings banks. 12 U.S.C. § 1730(a)(1)(A).

ies of out-of-state banks—including Citicorp—to merge with insured institutions under FSLIC's supervisory control.[7] FSLIC's authority as regulator to permit such acquisitions was unclear, and in any event apparently limited to situations where the institution was actually in default and FSLIC had been appointed receiver. 12 U.S.C. § 1729(b) (1976) (amended 1982). Congress, concerned about the stability of the federal deposit insurance funds in light of financial difficulties at a growing number of insured institutions, wished to preserve that option and allow FSLIC to utilize it even when an institution had not yet defaulted. The Act was not intended to provide " 'fundamental change in the authority or role of the[e] agencies. Rather, it simply provides the FDIC and FSLIC, under *specified conditions*, with more flexibility ...' " H.R.Rep. No. 272 at 11 (quoting testimony of Paul Volcker, Chairman, Federal Reserve Board) (emphasis added).

Those *specified conditions*, however, were clearly designed to limit FSLIC's ability to create exceptions to current restrictions on interstate and inter-industry mergers and acquisitions, as illustrated by this colloquy on the floor of the House of Representatives:

> Mr. Perkins: I would like to ask ... if we have opened any doors to interstate banking in this bill?
> Mr. Stanton: [M]y answer to that question is there is nothing. What it does do ... is spell out the procedure for order, where there are institutions in trouble, and it sets up a procedure to follow.

128 Cong.Rec. H8437 (daily ed. Oct. 1, 1982). Similarly, referring to provisions of the Senate bill later incorporated in the Act, Senator Riegle explained on the floor, "[t]hese sections of the bill were very carefully drafted by the committee in order to reflect the concerns expressed by a number of Senators regarding the problems associated with interstate branching and cross-industry mergers." 128 Cong.Rec. S12214

(daily ed. Sept. 24, 1982) (statement of Sen. Riegle).

Congress recognized that in authorizing acquisition of distressed institutions FSLIC would need absolute discretion in some areas, *e.g.*, determining who is qualified to bid, 12 U.S.C. § 1730a(m)(2), and calculating the cost of the bids, 12 U.S.C. § 1730a(m)(3)(E). *But see Hartigan v. Federal Home Loan Bank Board,* 746 F.2d 1300, 1310 (7th Cir.1984). However, Congress balanced this flexibility with some requirements of procedural regularity: the Act "provided specific procedures for the agenc[y] ... to follow in order to facilitate the acquisition or merger of failed or failing institutions." H.R.Cong.Rep. No. 641, 97th Cong., 2nd Sess. 85 (1982). Whether FSLIC adhered to those procedures is the subject of this lawsuit.

### A. Priorities

The functional and geographic priorities FSLIC must consider when authorizing the acquisition of a failing insured institution are set out in subsection (3)(B) of the Act, which provides:

> In considering authorizations under this subsection, [FSLIC] shall give consideration to the need to minimize the cost of financial assistance and to the maintenance of specialized depository institutions. [FSLIC] shall authorize transactions under this subsection considering the following priorities:
> (i) First, between depository institutions of the same type within the same State;
> (ii) Second, between depository institutions of the same type in different States;
> (iii) Third, between depository institutions of different types in the same State; and
> (iv) Fourth, between depository institutions of different types in different States.

---

7. On August 13, 1982, FSLIC authorized Citicorp to acquire Fidelity Federal Savings and Loan Association of San Francisco.

12 U.S.C. § 1730a(m)(3)(B).[8]

■ The extent to which Congress would empower FSLIC to authorize emergency interstate and inter-industry acquisitions of troubled savings banks was, as we have indicated, a sensitive issue. Representative Gonzalez expressed a specific fear of some: "The bill will open the way for interstate megabanks. We can already see the outlines of these institutions.... Citibank has already acquired a major savings and loan a continent away from its headquarters.... [T]his bill lays the ground for a vast acceleration of the growing concentration of this Nation's financial powers." 128 Cong.Rec. H8434 (daily ed. Oct. 1, 1982) (statement of Rep. Gonzalez). That possibility was of lesser concern to other legislators: "Although I have been told that there are some industry people who would prefer to see an institution close rather than have it run by a different type of institution or one from another state, I know that this attitude is not prevalent in my part of the country." H.R.Rep. No. 272 at 45 (supplementary views of Rep. McKinney). The final bill reflected a compromise. The following discussion on the House floor, of particular relevance to this issue, demonstrates that the offeror's priority and the cost of the offer to FSLIC are to be given comparable weight in the determination of who would acquire troubled insured institutions:

> Mr. McCollum: ... Am I to understand ... that the priorities are not to be given any lesser consideration in this bill, in the conference report, than the need to minimize financial loss to the corporation; am I correct in that?
>
> Mr. Stanton: ... [T]hat is correct.
>
> . . . . .
>
> Mr. St Germain: I concur in the correctness.

128 Cong.Rec. H8437 (daily ed. Oct. 1, 1982)

When a statute requires agencies to "consider" particular factors, it "imposes upon agencies duties that are 'essentially procedural'.... [T]he only role for a court is to insure that the agency has considered the [factor]." *Strycker's Bay Neighborhood Council, Inc. v. Karlen,* 444 U.S. 223, 227, 100 S.Ct. 497, 499, 62 L.Ed.2d 433 (1980) quoting *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978). But FSLIC's entire administrative record contains only two fleeting references to the priorities of subsection (3)(B). The June 16 order awarding NPB to Citicorp contained a boilerplate recitation of the language of subsection (3)(B): "the Bank Board ... has given full and due consideration to the need to minimize the cost of financial assistance, the maintenance of specialized depository institutions, and the priorities of [section 1730a(m)]." And a June 16 memorandum by FSLIC's Acting General Counsel Harry Quillian merely stated, "In reviewing and costing the bids, the Office of the FSLIC adhered to the standards set forth in subsections (3)(A) and (B) of [section 1730a(m)]."

■ Stating that a factor was considered, however, is not a substitute for considering it. We must make a "searching and careful" inquiry to determine if FSLIC actually *did* consider it. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 416, 91 S.Ct. at 823. Beyond FSLIC's two cryptic assertions, we have searched the extensive administrative record in vain for any showing that FSLIC actually did give the statutorily required consideration to the bidders' priorities. To be sure, the Act does not require FSLIC to make formal findings. Nor, because FSLIC's action was an informal adjudication, 5 U.S.C. § 554, does the Administrative Procedure Act require that any particular procedure be followed. Still, even in informal adjudication an agency must provide the court an explanation sufficient to allow us to properly carry out our review. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 419–20, 91 S.Ct. at 825–26; *cf. American Trading*

---

**8.** The Act contained an identically worded provision directed at the Federal Deposit Insurance Corporation ("FDIC"). 12 U.S.C. § 1823(f)(6)(B) (1982).

*Transportation Company, Inc. v. United States,* 791 F.2d 942, 950 (D.C.Cir.1986).

 We have considerable documentation of FSLIC's decisionmaking process and it contains no evidence that FSLIC paid any attention to the priorities. During the June 16 FHLBB meeting at which Citicorp's offer was approved the following subjects were discussed: the terms of the competing offers, including their costs; Citicorp's agreement not to deal in securities to an extent not permitted by existing law; Citicorp's agreement not to convert NPB to a commercial bank; Citicorp's "integrity" as affected by payments it made to an advisor of District of Columbia Councilmember Charlene Jarvis; and Citicorp's record managing three FSLIC-insured institutions. However, not once during the entire meeting were the bidders' priorities even mentioned.

The order approving Citicorp's offer states that the Board considered in particular three memoranda. A June 16 memorandum by Thurman Connell, Acting Director, Office of FSLIC, compares advantages and disadvantages of the offers—but makes no reference to Getty's and Citicorp's priorities.[9] Also referred to is another June 16 memorandum, by Robert Cohrs, a FHLBB Supervisory Agent, which states:

> Based on our analysis of the bids received and the institution's adverse financial condition, the Citicorp proposal requires the least amount of FSLIC assistance and should provide a permanent solution to the problems of National Permanent. Therefore, we recommend that the Bank Board approve Citicorp's proposal to acquire National Permanent.

Neither this nor the third memorandum noted in the order—the above-mentioned Quillian memorandum, containing an analysis of "significant legal issues" involved in

the proposed Citicorp transaction—discusses the priorities.

In response to Getty's argument that FSLIC failed to consider Getty's statutory priority vis-à-vis Citicorp, FSLIC asserts that the *"entire* selection process was structured to give special consideration to the statutory priorities, in particular to finding qualified, financially capable acquirers within the state of the problem institution.... Because no in-state thrift solution was apparent, the FSLIC opened up the solicitation of offers to other potential offerors." Brief of Respondent at 21 (emphasis added). This argument sidesteps the question of whether FSLIC considered the priorities and suggests that Getty is not entitled to a first priority. Yet FSLIC in effect conceded Getty enjoys a first priority by failing to deny the assertions in Getty's opening brief that FSLIC's "consistent practice and interpretation of the statute is to include individual acquirers in the highest priority category," and that FSLIC representatives had specifically affirmed the practice would be maintained in the case of NPB. Brief of Petitioner at 16 n. 25. Instead, FSLIC's brief implicitly acknowledges Getty has first priority but makes an abstruse challenge to the weight it should be accorded: "While arguing that he was *technically* a first priority offeror, Getty ... [was] not a paradigm of the in-state thrift association that Congress sought to favor." Brief of Respondent at 22 (emphasis added). Since an individual investor, such as Getty, who simply puts capital into a troubled thrift implicates none of the interstate or inter-industry considerations that give rise to Congress' careful delineation of the priorities, it is difficult to understand how he could be regarded as other than a first priority acquirer. In any event, whether or not FSLIC could reasonably interpret the statute to treat

---

**9.** The advantages of Getty's offer were said to be: "1. Below cost of liquidation. 2. Provides for new capital into the industry." The disadvantages were these: "1. Less costly solution available. 2. Requires ongoing assistance for four years. 3. Requires that additional branching rights into Maryland and Virginia be grant-

ed." The advantages of Citicorp's offer were listed as: "1. Lowest Cost. (Estimated Present Value Cost.) 2. Viable Solution. 3. Provides for new capital into the industry. 4. Relatively simple Assistance Agreement to administer." Only one disadvantage was stated: "Tax Indemnification."

individual investors as having less than first priority, FSLIC gave no indication prior to litigation that it had changed its practice and applied that interpretation of subsection (3)(B) to this proceeding.[10] Therefore, FSLIC's position must be rejected for purposes of this case. *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

In addition to suggesting that Getty's first priority status is dubious, FSLIC also contends that Citicorp carries, at minimum, a second priority because it is *both* an out-of-state savings and loan holding company and an out-of-state bank holding company. This is so, argues FSLIC, because although Citicorp is the nation's largest bank holding company and owns the nation's largest bank, it has now been permitted by FSLIC to acquire three failing saving and loan associations and therefore has achieved a double character for purposes of subsection (3)(B).[11] This argument seems somewhat strained. The Garn-St Germain Act legislative history shows that even after it acquired one thrift, Citicorp was the paradigm of the disfavored acquiring institution.[12] It turns the statutory purpose on its head to conclude that a large national bank could improve its disfavored status for acquiring out-of-state thrifts merely by acquiring a thrift, no matter how small, in a different state. Surely Citicorp's character—the "type" of depository institution it is under subsection (3)(B)—is not altered by additions of small thrifts. Under FSLIC's interpretation of the statute, certain large banks could achieve, at least for a time, an apparently capricious priority over others. And, as more and more bank holding companies acquire thrifts, and thus a "double character" under subsection (3)(B), the very distinction between depository institutions that the statute seeks to preserve would be

obliterated. It is unnecessary to conclusively reject this FSLIC argument, however, since even accepting *arguendo* FSLIC's position that Citicorp has second priority, Getty's priority, as we have determined, is higher for purposes of this case.

In sum, the record does not support FSLIC's contention that it gave actual consideration to Getty's and Citicorp's priorities. The conclusory recitation in the June 16 order, and the even more terse statement in the June 16 Quillian memorandum, fall far short of the *"reasoned* consideration" Congress clearly intended. *American Trading Transportation Company, Inc. v. United States*, 791 F.2d at 950 (emphasis added). They contain no indication of which bidders had which priorities, let alone analysis of the priorities and how they influenced FSLIC's decision. The administrative record does indicate considerations that contributed to FSLIC's decision; the absence of any references to the priorities (beyond the two conclusory statements), especially when viewed in the light of the extensive documentation before us, leads us to conclude that FSLIC in fact did not consider the priorities. Because the statute required FSLIC to consider this factor, FSLIC's orders exceeded its statutory authority.

### B. Rebidding

The Act also directs FSLIC to permit some offerors to submit new bids when certain conditions are met. Subsection (3)(A) provides:

> If, after receiving offers, the offer presenting the lowest expense to the Corporation that is in a form and with conditions acceptable to the Corporation (hereinafter referred to as the "lowest acceptable offer"), is from an institution that is not an existing in-State insured institu-

---

10. FSLIC counsel "upped the ante" at oral argument, claiming that as an individual Getty had *no* priority at all, so subsection (3)(B) was not implicated. "[T]he difficulty remains that considerations urged here in support of the [agency's] order were not those upon which its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 92, 63 S.Ct. 454, 461, 87 L.Ed. 626 (1943).

805 F.2d—25

11. In support of its position, FSLIC cites agency precedent: Citicorp was determined in 1983 to have second priority under subsection (3)(B) for its successful bid to acquire New Biscayne Federal Savings and Loan Association of Miami.

12. *See* 128 Cong.Rec. H8434 (daily ed. Oct. 1, 1982) (statement of Rep. Gonzales).

tion or an in-State savings and loan holding company, the Corporation shall permit each offeror who made an offer the estimated cost of which to the Corporation was within 15 per centum or $15,000,000, whichever is less, of the *initial lowest acceptable offer* to submit a new offer.

12 U.S.C. § 1730a(m)(3)(A) (emphasis added).[13]

Getty contends that Citicorp's June 5th bid was the "initial lowest acceptable offer." Because Getty had made an offer prior to June 5 that was within 15 percent and $15 million of Citicorp's offer, on June 10 and again on June 18 he requested an opportunity to rebid, invoking subsection (3)(A). FSLIC denied the request, maintaining that Citicorp's earlier, February 28th bid—conditioned on obtaining permission to convert NPB into a commercial bank—constituted an "acceptable" offer (even though not accepted). If so, then Getty had no right under subsection (3)(A) to rebid—since Getty's outstanding offer as of February 28 was more than 15 percent higher than Citicorp's. Resolution of this issue, therefore, turns on the meaning of "lowest acceptable offer."

■ FSLIC first argues that its application of the term "acceptable" is unreviewable because it is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1982). An action is committed to agency discretion if "there is no law to apply." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 410, 91 S.Ct. at 821. This, in turn, depends on whether "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," or whether instead Congress "has indicated an intent to circumscribe agency ... discre-

tion, and has provided meaningful standards for defining the limits of that discretion...." *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 1655, 1657, 84 L.Ed.2d 714 (1985).

■ FSLIC contends its decision regarding whether an offer is "acceptable" is not an appropriate issue for judicial review because Congress provided no standards for making that determination. The statutory term "acceptable," clearly not referring to what is actually accepted, is said to be a term of unbounded plasticity. If we were to accept this argument, the rebidding procedure of subsection (3)(A) might never be utilized, because FSLIC would have exclusive control over the trigger—receipt of an "acceptable" offer. Put another way, the rebidding procedure of subsection (3)(A) would be effectively rendered optional for FSLIC rather than mandatory.[14] That, however, is the flaw in FSLIC's argument: Congress made the rebidding procedure mandatory, and thereby deliberately restricted FSLIC's flexibility. 12 U.S.C. § 1730a(m)(3)(A) (FSLIC "shall" permit a rebid). If "acceptable" meant whatever FSLIC said it meant in any given case, the legislative compromise would be undone. An "acceptable" offer then must carry a meaning that has operational bite—i.e., a meaning that obliges FSLIC to provide a rebidding opportunity once such an offer is received. It follows then, that "acceptable" must carry an interpretation that reflects this statutory purpose, and therefore necessarily is susceptible to judicial review. Moreover, the structure of the Act itself supports our determination that FSLIC's discretion is limited here. The power to interpret other provisions of the statute is broadly delegated to FSLIC. It has "sole discretion" under subsection (2) to determine which prospective acquirers are

---

**13.** The Act contained a similar provision regarding the authority of the Federal Deposit Insurance Corporation to permit acquisitions of FDIC-insured banks in danger of closing. 12 U.S.C. § 1823(f)(6)(A) (1982).

**14.** It is quite apparent from the record and briefs that FSLIC is decidedly uncomfortable with the rebidding procedure set out in subsec-

tion (3)(A). Indeed, FSLIC has shown us no case where the provision actually resulted in a rebid. We have no difficulty understanding FSLIC's concern, since the prospect of its invocation complicates FSLIC's efforts to solicit offers and negotiate with offerors. And once triggered the provision ostensibly would restrict FSLIC's discretion to select the winner.

"qualified and capable" and therefore able to bid. 12 U.S.C. § 1730a(m)(2). Similarly, subsection (3)(E) makes FSLIC's calculation of the cost of offers "determinative"—although even that has been held subject to limited judicial review. *Hartigan v. Federal Home Loan Bank Board*, 746 F.2d 1300, 1310 (7th Cir.1984) (court can review FSLIC's calculation of the cost of bids to ensure FSLIC acted consistently in the application of the methodology and economic assumptions).[15] The fact that Congress in the same statute expressly committed only certain issues to agency discretion suggests an intention that other issues—including whether an offer is "acceptable" for purposes of subsection (3)(A)—be subject to judicial review. We therefore reject FSLIC's contention that its application of the statutory term "acceptable" is "committed to agency discretion by law."

We next turn to the interpretations of the phrase "lowest acceptable offer" advanced by the parties. Getty argues that Citicorp's February 28th offer could not have been deemed acceptable, because the conversion condition transgressed FSLIC policy and was inconsistent with statutory direction if not command, 12 U.S.C. § 1730a(m)(3)(B) (FSLIC must consider "maintenance of specialized depository institutions"). FSLIC disagrees. Of course, if FSLIC's interpretation of the phrase was a reasonable one we would be obliged to defer. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The difficulty with FSLIC's position, however, is that although it disagrees with Getty it did not exactly fix upon its own interpretation—at least until oral argument—perhaps because of its view that its application of the term would be totally unreviewable. To be sure, on June 16 FSLIC announced that the original Citicorp

offer was "acceptable" even though not accepted, and thus Getty had no rebidding rights. To the extent that this bald assertion purports to be an interpretation of statutory language, it is insufficiently explained to allow us to review it for reasonableness.

Prompted by Getty's June 18 request for reconsideration, FSLIC's acting general counsel wrote a memorandum to the FHLBB stating:

> Only the FSLIC can determine whether a condition is "acceptable".... The FSLIC examines such factors as the qualifications and managerial capacity of the acquirer, the cost of the proposal and the type of capital the acquirer plans to contribute.

> The Citicorp offer was the least costly of the four and contained no conditions that were contrary to law or Bank Board policy. The Board found this initial Citicorp offer to be the "initial lowest acceptable offer."

This analysis simply recites the factors FSLIC would use in determining whether to actually accept an offer; it casts no light on how the word in subsection (3)(A) should be interpreted.

In its brief FSLIC moved only a little closer to embracing a plausible interpretation of the term "acceptable." FSLIC stated Citicorp's conversion condition had been acceptable "because, as a general matter, offers for supervisory acquisitions containing such conversions of thrifts to commercial banks are acceptable to the FSLIC both as a matter of law and policy." Brief of Respondent at 33–34. From this language it might be thought that FSLIC was arguing an offer is "acceptable" under subsection (3)(A) if it is consistent with both law and FSLIC policy. FSLIC's appellate counsel, however, abandoned that position at

---

**15.** We reject Getty's argument that we should direct FSLIC to reexamine the costs associated with his offer. Getty argues that FSLIC's calculation of the cost of his indemnification request was "wholly arbitrary," "makes no sense from an accounting standpoint," and was inconsistent with FSLIC's evaluation of Citicorp's offer. Even if we were to accept the Seventh Circuit's

approach in *Hartigan* Getty has not met the substantial burden of showing FSLIC's treatment of the offers was inconsistent. The most he has shown is that FSLIC approached Citicorp for clarification of Citicorp's indemnification request, and either did not similarly contact Getty—or if it did, did not share Getty's understanding of the clarification received.

oral argument when the court released to Getty an internal FSLIC memorandum, *see supra* p. 1053, suggesting Citicorp's conversion condition was under review as a "policy consideration" on May 7—more than two months after FSLIC received the offer.[16] FSLIC's counsel then shifted to a new definition of an "acceptable" offer: any offer that FSLIC could legally accept. However, because FSLIC "adopted no expressly articulated position at the administrative level as to the meaning" of the term,[17] *Investment Company Institute v. Camp*, 401 U.S. 617, 627, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971), we may not accept this *post hoc* rationalization.[18] To do otherwise would be to substitute counsel's discretion for that of the agency. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).

■ If we were obliged in this case to decide upon a definition, we would find the most natural interpretation of "lowest acceptable offer" to be the offer FSLIC would accept *but for* the rebidding requirement of subsection (3)(A). Under this con-

struction, FSLIC would be obliged by subsection (3)(A) to stop just prior to accepting an offer from a bidder of less than highest priority, and compare it with offers on the table.[19] If any such offer were within 15 percent and $15 million of the cost of the offer FSLIC would otherwise accept, FSLIC would be required to permit a new offer. We recognize this interpretation causes FSLIC operational difficulty[20]—but the truth is *any* definition causes FSLIC difficulties.

Even if "acceptable" is given the more objective interpretation FSLIC suggests in its brief (an offer that is merely consistent with law and FSLIC policy), we believe it apparent that FSLIC did not apply that test in a reasonable manner. As of February 1986, FSLIC had never permitted an out-of-state bank to acquire a thrift and convert it to a commercial bank. In fact, as we noted, such a proposal runs counter to a specific factor FSLIC is obliged to consider in approving authorizations: maintenance of "specialized depository institutions." 12 U.S.C. § 1730a(m)(3)(B). It is, therefore,

16. Describing a May 7 meeting at which District of Columbia Councilmember Charlene Jarvis urged FSLIC to approve Citicorp's offer, Dan Kaschmitter, Director of FSLIC's Mergers and Acquisitions Division, wrote on June 10:

> Ms. Jarvis said that she understood that there were also concerns about Citicorp wanting to convert National Permanent to a bank. We said that this was a policy consideration for the Board and that they had it under review.

17. This situation differs from that in *Church of Scientology of California v. IRS*, 792 F.2d 153 (D.C.Cir.1986). Although the agency in *Scientology* had not articulated an interpretation at the administrative level, the issue in the case had not arisen prior to litigation. The concurring opinion suggested the Court should defer to the interpretation presented in court by agency counsel for the first time because the agency, through its counsel, set forth the interpretation at the first moment it was appropriate and relevant to do so. *Id.* at 166 (Silberman, J., concurring).

18. We do not decide if this definition constitutes a reasonable interpretation to which we would normally defer.

19. Getty argues that in determining whether subsection (3)(A) is triggered, FSLIC must com-

pare the "acceptable" offer with all outstanding offers—including offers received after the "acceptable" offer was received. FSLIC responds that it is required to compare the "acceptable" offer only to contemporaneous offers. FSLIC warns that Getty's interpretation would paralyze the bidding process because "any other offeror could improve his offer at the last minute to come within 15 percent or $15 million of that offer." Such a problem certainly did not arise in this bidding procedure—because FSLIC *requested* Getty to submit his second and third offers. FSLIC could, of course, solve the difficulty by enacting regulations regarding the timing for submission of offers. In any event, we need not decide the issue because we hold, *infra* p. 1061, that FSLIC failed to make a timely determination that Citicorp's first offer was "acceptable"—and Getty's final offer had already been made when Citicorp submitted its June 5th offer.

20. We believe FSLIC's concern that bidders will be able to trigger waves of statutory rebids is unfounded. Subsection (3)(A) refers to the *initial* lowest acceptable offer. A reasonable interpretation is that the rebid provision of subsection (3)(A) can be triggered only once: the *first* time FSLIC determines it has received an acceptable offer.

not surprising that as late as May 7 FSLIC regarded the conversion condition of Citicorp's February 28th offer as presenting a "policy consideration for the Board." *See supra* note 16. Even at that late date, FSLIC had not yet determined whether the conversion condition of Citicorp's February 28th offer transgressed its policy. We find nothing in the record showing that FSLIC ever made that determination, until the issue was mooted by Citicorp's removal of the condition.[21] FSLIC's action, we reluctantly conclude, indicates not so much an effort to interpret and comply with the statute as a fixed and resolute determination not to utilize subsection (3)(A)—an effort that seems to flout congressional direction.

Had FSLIC adopted its "law and policy" interpretation of "acceptable" reasonably contemporaneously with receipt of Citicorp's February 28th offer, and applied it in some fashion at that time, we would be faced with an agency interpretation to which *Chevron* would apply. But since FSLIC did not in a timely manner adopt an interpretation that would have permitted it to ascribe "initial lowest acceptable offer" status to Citicorp's February 28th offer, the June 5th offer which FSLIC accepted must have been the "initial lowest acceptable offer." And because Getty had previously submitted an offer that was within 15 percent and $15 million of that offer, FSLIC was required by subsection (3)(A) to permit Getty to submit a new offer.[22] FSLIC's order denying Getty permission to submit a new bid was therefore contrary to law.

### III.

■ Getty argues that he alone should be permitted to submit a new offer for NPB—which presumably would then be compared with the Citicorp offer that FSLIC accepted. We think under the circumstances that would be inequitable. Getty now knows a great deal more about Citicorp's offer than would have been the case if, prior to accepting Citicorp's offer, FSLIC had properly permitted him to submit a new offer pursuant to subsection (3)(A). Furthermore, the value of NPB may have substantially risen in the interim. Under section 1730a(k), we are authorized to affirm, *modify*, terminate, or set aside in whole or in part, FSLIC's orders. In fashioning our remand order, our goal must be to place Getty in the situation he would have been in had FSLIC not acted improperly. *Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 206 (D.C.Cir.1984). But we should not improve his position.

By the same token, Getty should not be disadvantaged because FSLIC improperly authorized the acquisition of NPB by Citicorp. In his motion for a stay before this court, *see supra* p. 1052, Getty expressed concern that unless the stay was granted he would be prejudiced. Our denial of the stay was in part based on the assumption that, should we determine FSLIC had misapplied the statute, Getty could receive adequate relief. At oral argument, however, FSLIC's counsel indicated that FSLIC would be exceedingly reluctant—no matter what the circumstances—to unravel the transaction.[23] And in its brief opposing

---

**21.** FSLIC's approval of a similar condition set by Rainier Bancorporation sheds no light on whether FSLIC found Citicorp's conversion condition acceptable, because that approval was not given until July 14, 1986, after the present litigation began.

**22.** FSLIC notes it gave Getty three opportunities to rebid after receipt of Citicorp's initial offer, even though it was not required to do so. From this FSLIC argues that Getty got more than he had a right to expect. This would be true if the reason Getty had no right to rebid was that Citicorp's initial offer had been acceptable and Getty's was not within the lesser of 15 percent

or $15,000,000. However, simply letting Getty rebid *before* an acceptable offer has been received cannot extinguish Getty's statutory right to rebid *after* the initial lowest acceptable offer has been submitted. In fact, it appears that FSLIC did the exact opposite of what the statute required: FSLIC continued to solicit offers from other bidders only until it received an "acceptable" offer from Citicorp—at which point it refused to permit any more offers.

**23.** FSLIC's reluctance is perhaps heightened because the Assistance Agreement with Citicorp apparently obligates the agency to indemnify Citicorp for losses in the event of a challenge to

Getty's motion for the stay, FSLIC said, "[t]here is no assurance that the Bank Board would not reject even ... a lower [Getty] bid on other grounds (*e.g.*, competence of the proposed management team)." Brief of Respondent in Opposition to Petitioner's Emergency Motion for Stay at 26.

That statement suggests FSLIC could, even after a rebidding under subsection (3)(A), reject a better offer presented by a first priority bidder merely because a favored bidder has, in FSLIC's view, superior management ability or a successful track record. Of course, as noted above, under subsection 1730a(m)(2) FSLIC has "sole discretion" to solicit offers from those prospective purchasers it determines are both qualified and capable of making the acquisition. But the statutory scheme does not appear to permit FSLIC, once having determined a prospective purchaser's qualifications are adequate and solicited an offer from that purchaser, to select another purchaser *on the grounds of capability*. Subsection (3)(B) explicitly states the considerations FSLIC is to weigh in comparing offers: (1) the need to minimize the cost to FSLIC; (2) the maintenance of specialized depository institutions; and (3) the geographic and functional priorities. 12 U.S.C. § 170a(m)(3)(B).[24] Still, all we need hold in this case is that qualifications cannot be reconsidered once subsection (3)(A)'s rebidding procedure has been triggered; otherwise, subsection (3)(A) could easily be nullified. Getty has passed FSLIC's competency threshold; we therefore reject FSLIC's argument that it can still favor Citicorp over Getty on those grounds.

This brings us to our Order. Since we have concluded that under the changed circumstances it would be unfair to permit Getty to simply submit a new offer, we remand to FSLIC to allow *both* parties to submit new offers as if the two were begin-ning the bidding afresh.[25] If Citicorp's bid is "acceptable," and Getty's bid is within the lesser of 15 percent or $15 million of Citicorp's, then Getty must be afforded a subsequent right to rebid.

---

the acquisition based on the unlawfulness of FSLIC's action.

**24.** We do not decide, because the issue is not before us, whether these three considerations are exclusive, or, alternatively, whether additional factors—such as new questions relating to a bidder's integrity—might also be appropriate considerations.

**25.** If Getty chooses *not* to submit a bid, nothing in this opinion shall have any effect on the existing agreement between FSLIC and Citicorp.