**J.A. JONES MANAGEMENT SERVICES, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

**Wackenhut Services, Inc., Intervenor.**

**No. 00–1023.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 2000.

Decided Sept. 29, 2000.

Douglas L. Patin argued the cause and filed the briefs for petitioner.

Sandra Wien Simon, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were David W. Ogden, Acting Assistant Attorney General, and Anthony J. Steinmeyer, Attorney.

Richard J. Webber argued the cause and filed the brief for intervenor Wackenhut Services, Inc.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A disappointed bidder challenges the Federal Aviation Administration's award of a contract. Reviewing the FAA's decision pursuant to the highly deferential arbitrary and capricious standard, we deny the petition for review.

I

Following a competitive bidding process, the FAA awarded Wackenhut Services, Inc., intervenor herein, a $5 million contract to provide operations and maintenance services at the William Hughes Technical Center, a 5059 acre facility in New Jersey that serves as the national scientific test base for FAA research, de-

velopment, and acquisition programs. Pursuant to FAA procedures, petitioner J.A. Jones Management, an unsuccessful bidder, protested the award to the agency's Office of Dispute Resolution for Acquisition ("ODRA"). In that protest, Jones claimed both that the agency failed to follow its own procedures and that Wackenhut failed to meet the contract solicitation's substantive requirements. After reviewing the evidence and making factual findings, ODRA recommended that Jones's protest be denied. Adopting ODRA's findings and recommendations, the FAA Administrator issued a final order awarding the contract to Wackenhut.

The solicitation required the contract to be awarded to the responsible, low-priced offeror deemed acceptable in each of several listed technical areas. The agency contracting officer, assisted by a contract specialist, oversaw the procurement decision. As outlined in the solicitation, an eight-member Technical Evaluation Board following a Technical Evaluation Plan was responsible for determining whether offers met the technical requirements. According to the Plan, if the Board unanimously decided that an offer failed in any one area, the offeror would be disqualified from further consideration. All agree that if the Board was not unanimous, the contracting officer would retain discretion to award the contract to the offeror.

At a July 26, 1999 meeting, the Technical Evaluation Board unanimously disqualified Wackenhut, stating in its report that the company had failed in two specific areas: demonstrating how it would remove snow from the facility and proposing an electrical engineer with the required work experience. Reviewing the Board decision, the contract specialist discovered that the individual evaluation sheet of one of the Board members—Evaluator F—indicated that he had given Wackenhut a passing grade in both areas. In particular, referring to the snow removal task, Evaluator F wrote on his scoring sheet: "I think this was addressed adequately." When the contract specialist asked for an explanation, the Board chair pointed out that, despite his individual assessment, Evaluator F had signed the report disqualifying Wackenhut in the two areas. The chair also told the contract specialist that Evaluator F had agreed to change his individual scoring sheet to reflect the Board's evaluation. As ODRA later found, however, Evaluator F failed to do so.

Unsatisfied, the contract specialist arranged a second Board meeting to discuss the inconsistency between the Board report and Evaluator F's individual scoring sheet. At that meeting, which occurred on August 12, Evaluator F reiterated his belief in the acceptability of Wackenhut's offer and refused to change his evaluation sheet. During a break in the meeting, Evaluator F, believing that his unwillingness to change his assessment of Wackenhut had become an obstacle to agreement, telephoned the contract specialist and asked to be removed from the Board. The contract specialist denied his request.

After the break, the chair called the contract specialist to inform her that the Board was still discussing Wackenhut's proposal. The contract specialist directed the chair to postpone any further action until she finished discussing the matter with the contracting officer and agency counsel. During that discussion, the three found Wackenhut's offer technically acceptable and decided not to follow the Board's assessment. Learning of this decision, the chair reconvened the Board. Under the circumstances, the Board decided it was pointless to meet further. The contracting officer later determined that Wackenhut was the responsible, low-priced offeror deemed acceptable in all of the solicitation's technical areas. Wackenhut was awarded the contract.

After hearing testimony about these events, ODRA concluded that the contracting officer properly followed agency procedures in awarding the contract to Wackenhut. Central to the dispute in this case, ODRA found that the Board's decision had

not been unanimous and that Wackenhut had therefore not been disqualified. This determination rested primarily on the events of the August 12 meeting—in particular, Evaluator F's continued refusal to agree that Wackenhut was unacceptable. At one point in its report, ODRA found that "[i]t is undisputed that, at the conclusion of the final Board meeting on August 12, the Board, in a *non-unanimous* vote, found Wackenhut's proposal unacceptable." Reviewing all of the evidence, ODRA concluded that the meeting "ended in a non-unanimous Board decision."

Jones, the unsuccessful bidder, now challenges the award of the contract to Wackenhut. Jones claims that, contrary to ODRA's finding, no non-unanimous vote occurred at the end of the August 12 meeting. As Jones views the events of August 12, the Board reached no decision at all. Accordingly, Jones argues, the contracting officer was bound by the July 26 unanimous disqualification of Wackenhut. Focusing on three of the solicitation's technical requirements, Jones also challenges the contracting officer's determination that Wackenhut was qualified. We consider each claim in turn.

## II

■ We review the FAA's non-unanimity finding under the familiar arbitrary and capricious standard. *See* 5 U.S.C. § 706(2)(A). Under this standard, we "may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." *Kisser v. Cisneros,* 14 F.3d 615, 619 (D.C.Cir.1994); *see also* 49 U.S.C. § 46110(c) (FAA "[f]indings of fact . . . , if supported by substantial evidence, are conclusive."). Jones fails to appreciate the result this highly deferential standard so clearly dictates.

■ Jones argues that the contracting officer lacked discretion to disregard the Board's disqualification of Wackenhut. Because Jones concedes that the contract-

ing officer had discretion to disregard a non-unanimous Board, its claim necessarily turns on its assertion that the Board was in fact unanimous. To prevail, Jones must demonstrate that the agency's determination to the contrary did not rest on substantial evidence. Yet as ODRA found, not only did Evaluator F declare Wackenhut acceptable on his individual scoring sheet (which he never altered despite his apparent promise to do so), but at the August 12 meeting, he again refused to change his evaluation. This evidence is more than enough to sustain the agency's finding of nonunanimity.

■ Seeking to undermine the agency's decision, Jones argues that it rests on an unsupported ODRA factual finding: that "it is undisputed that, at the conclusion of the final Board meeting on August 12, the Board, in a *non-unanimous* vote, found Wackenhut's proposals unacceptable." The finding that formal balloting took place at the August 12 meeting indeed lacks support in the record. ODRA's error does not require reversal, however, for we do not believe that the agency rested its decision solely on the existence of a formal vote. *See* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."). As we read ODRA's report, the agency relied primarily on Evaluator F's individual evaluation sheet and his statements at the August 12 meeting. Using the word "vote" only twice, ODRA's report repeatedly refers to a non-unanimous Board "decision." Moreover, as Jones's counsel concedes, neither the agency's procedures nor the contract solicitation required a formal vote, so ODRA had no reason to consider the existence of a vote significant. Thus, even without relying on the existence of a nonunanimous vote, the agency had adequate support for its ultimate conclusion that "[t]he August 12 meeting, which was the last meeting of the Board on the subject, ended in a non-unanimous Board decision of unacceptability of the Wackenhut proposal."

■ Jones provides little evidence to counter the agency's nonunanimity determination. Pointing out that the contract specialist cut off the August 12 meeting in the middle of discussion, Jones argues that the Board reached no decision at all. While this is certainly one possible view of what happened at the meeting, the question we face is "not whether [petitioner's] view of the facts supports its version of what happened, but rather whether the [agency's] interpretation of the facts is reasonably defensible." *Harter Tomato Prods. Co. v. NLRB*, 133 F.3d 934, 938 (D.C.Cir.1998) (internal quotation marks omitted). As we demonstrate above, ODRA's nonunanimity determination finds more than adequate support in the record.

### III

■ Jones's remaining claims require little attention. Arguing that Wackenhut's offer failed to meet the solicitation's substantive requirements, Jones urges us to reverse the agency's final contract award. Where a procurement decision requires an agency to assess an offeror's qualifications to perform a contract, our review is "especially deferential." *See Iceland S.S. Co., Ltd.-Eimskip v. United States Dept. of the Army*, 201 F.3d 451, 461 (D.C.Cir.2000). We are particularly reluctant to second-guess agency decisionmaking on these "'delicate questions.'" *Elcon Enters., Inc. v. Washington Metro. Area Transit Auth.*, 977 F.2d 1472, 1479 (D.C.Cir.1992) (quoting *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 203 (D.C.Cir.1984)).

■ Jones first claims that Wackenhut failed to satisfy the solicitation's past performance provisions, which required experience managing a facility of similar size, *i.e.*, with "over 60 employees and/or over $5 million per year." The FAA found that Wackenhut met this requirement, based in part on its experience managing a correctional facility with sixty workers, including forty-four inmates. Jones contends that the agency erred in considering the inmates to be employees. But as the agency found, the inmates were employees because they were both paid and supervised by Wackenhut. Given our especially deferential standard of review, we cannot imagine a basis for overturning the agency's judgment on this issue. Nor do we find any reason to credit Jones's unsupported assertion that Wackenhut's experience managing a correctional facility was not the type of experience the solicitation required.

■ Jones next argues that the FAA was not entitled to award the contract to Wackenhut because the company failed to include in its offer a copy of its proposed Environmental Specialist's license. By providing that such a failure "may" render the proposal ineligible, however, the solicitation left the agency with discretion to award the contract to a bidder whose offer omitted the required license.

■ Equally without merit is Jones's final claim that the agency was not entitled to award the contract to Wackenhut because its offer contained résumés of key personnel whose consent had not been obtained. Relying again on our highly deferential standard of review, we find no basis for disturbing ODRA's judgment that the résumés were submitted in good faith.

### IV

The petition for review is denied.

*So ordered.*