# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued December 11, 2019        Decided May 5, 2020

No. 19-1071

FLYERS RIGHTS EDUCATION FUND, INC., DOING BUSINESS AS
FLYERSRIGHTS.ORG AND PAUL HUDSON,
PETITIONERS

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION AND
ELAINE L. CHAO,
RESPONDENTS

---

On Petition for Review of an Order of the
United States Department of Transportation

---

*Joseph E. Sandler* argued the cause and filed the briefs for petitioners.

*Matthew J. Glover*, Counsel to the Assistant Attorney General, U.S. Department of Justice, argued the cause for respondents. With him on the brief were *Abby C. Wright*, Attorney, *Steven G. Bradbury*, General Counsel, U.S. Department of Transportation, *Paul M. Geier*, Assistant General Counsel for Litigation and Enforcement, and *Charles E. Enloe*, Trial Attorney.

*Warren L. Dean Jr.* and *Thomas Sean McGowan* were on the brief for *amicus curiae* Air Transport Association of

America, Inc. d/b/a Airlines For America in support of respondents.

Before: ROGERS and MILLETT, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: Petitioners are the Flyers Rights Education Fund, Inc. (doing business as FlyersRights.org) and its president. The first issue is whether they – or one of them – have standing. If so, the second issue is whether the Department of Transportation acted arbitrarily when it denied FlyersRights' request to begin a rulemaking dealing with the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (entered into force Nov. 4, 2003).

This treaty, commonly known as the Montreal Convention, is the latest in a long series of international agreements regulating commercial air travel. One provision of the Montreal Convention imposes liability on air carriers for damages caused by passenger delay. Montreal Convention art. 19. Another requires airlines to give "written notice to passengers" explaining that the Convention may limit liability for "death or injury and for destruction or loss of, or damage to, baggage, and for delay." Montreal Convention art. 3(4).

FlyersRights, a non-profit organization, describes its mission as educating airline passengers of their rights and advocating on their behalf. In its rulemaking request, FlyersRights claimed that airlines were not giving passengers sufficient notice of their right to compensation for delays in flights. FlyersRights urged the Transportation Department to

issue regulations requiring the airlines to print written summaries of passengers' rights on all international airline tickets, including information about how passengers suffering from flight delays might be compensated.

The Transportation Department denied the rulemaking request in a letter on February 1, 2019. The Department explained that it did not have enough "evidence that carriers are failing to fulfill their notice obligations," and that it did not have enough evidence of "consumer confusion." The Department also pointed out that another rulemaking proceeding had already begun, a proceeding that touched upon the concerns FlyersRights had raised. The Department issued its final rule in that proceeding on April 16, 2019. *See* Elimination of Obsolete Provisions and Correction of Outdated Statutory References in Aviation Economics Regulation, 84 Fed. Reg. 15,920, 15,929–30 (Apr. 16, 2019). Under that rule, airlines are now required to print written summaries of passengers' rights on international airline tickets, though those summaries do not include all of the information that FlyersRights requested in its petition. *Id*.

FlyersRights contends that the denial of its request for rulemaking was arbitrary in violation of the Administrative Procedure Act because the Transportation Department disregarded significant evidence of airline deception and ignored evidence of consumer confusion.

This brings us to the threshold question of standing. FlyersRights sues not because of injury to itself, but to redress injury to its "members." The usual requirements for such "associational standing" are that the organization demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted

nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). In mentioning organizations with "members" what comes to mind are common arrangements such as professional associations, labor unions, social clubs and the like. But what if the organization asserting associational standing does not have "members" of this sort?

The Supreme Court in *Hunt* held that "[i]n determining whether an organization that has no members in the traditional sense may nonetheless assert associational standing, the question is whether the organization is the functional equivalent of a traditional membership organization." *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002).

FlyersRights is not "a traditional membership organization" and does not purport to be one. It claims that it nevertheless has standing because it is suing on behalf of its "members," or more accurately those individuals associated with the organization who are the "functional equivalent" of members. *Hunt* considered three criteria in determining whether the "nonmembership organization" sufficiently represented its constituents' interests to be able to bring suit on their behalf. *Hunt's* "indicia of membership" were these: whether the individuals play a role in selecting the organization's leadership, in guiding the organization's activities, and in financing the organization's activities. *Hunt*, 432 U.S. at 344–45; *see also Am. Legal Found. v. FCC*, 808 F.2d 84, 90 (D.C. Cir. 1987). Relying on this list, our court has held that readers of a magazine were not members for associational standing purposes. See *Gettman v. DEA*, 290 F.3d 430, 435 (D.C. Cir. 2002). Viewers who merely watched the news regularly were not members of a media watchdog group for associational standing purposes. *Am. Legal Found.*, 808 F.2d at 89–90. Past work with groups of individual investors did not render the investors

equivalent to "members" of Fund Democracy. *Fund Democracy*, 278 F.3d at 25–26.

Even if the list of "indicia" identified in *Hunt* was meant to be exhaustive – which is quite doubtful – we believe that FlyersRights is entitled to assert associational standing. Counsel for the petitioners explained at oral argument that one becomes a "member" of FlyersRights by signing up to receive information from the organization. FlyersRights operates a hotline for airline passengers, run by the Board of Directors and staffed by volunteers from the membership. (Hudson Supp. Decl. ¶ 3). FlyersRights frequently polls its airline passenger members in order to determine which policy issues and types of actions FlyersRights will pursue on their behalf. (Hudson Supp. Decl. ¶ 4). FlyersRights' leadership also considers the petitions members have signed when determining issues and policies to pursue on their behalf. (Hudson Supp. Decl. ¶ 5). The structure of the organization enables FlyersRights members to have direct input, and member input guides the organization's activity. (Hudson Supp. Decl. ¶ 4-5). Further, a majority of FlyersRights' funding comes directly from its members, and many of the organization's members have contributed some amount of money to support FlyersRights' advocacy effort. (Hudson Supp. Decl. ¶ 6).

Although the constituents of the organization do not elect the leadership, the factors mentioned above indicate that there is a sufficient amount of interaction to influence the organization's activities. *Cf. Elec. Privacy Info. Ctr. v. Dep't of Commerce,* 928 F.3d 95, 101 (D.C. Cir. 2019), *petition for cert. filed*, No. 19-777 (Dec. 16, 2019)*; see also* Karl S. Coplan, *Is Voting Necessary? Organization Standing and Non-Voting Members of Environmental Advocacy Organizations*, 14 S.E. Envtl. L.J. 47, 78–79 (2005). Other circuits have also concluded that if an "organization is sufficiently identified with and subject

to the influence of those it seeks to represent," it may assert associational standing, even though it does not possess all three indicia of membership considered in *Hunt*. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003); *see also Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999).

In addition, there is no question that the litigation here is germane to FlyersRights' organizational purpose and that the relief requested – a rulemaking – does not require participation by individual members. *See Hunt*, 432 U.S. at 343.

These conclusions do not end the standing inquiry. FlyersRights still must identify at least one member with independent standing to sue the Department. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). It puts forth two candidates. One, Robert Lax, purportedly suffered an injury when his parents were affected by a flight cancellation and he was forced to spend time communicating with the airline about that cancellation. The Department contests Lax's standing on the ground that he was not personally injured. The other, Leopold de Beer, claims to have suffered an injury when his own flight was significantly delayed and the airline's inadequate notice regime hindered his ability to claim compensation. The Department does not challenge de Beer's standing, or his sworn declaration that he was personally delayed and would have been eligible for compensation, but the inadequate notice regime left him uninformed of his rights and impeded his ability to claim his compensation. Thus, de Beer had standing to bring suit and so does FlyersRights.

As to the merits, FlyersRights claims that the Department's denial of its petition for rulemaking was arbitrary and capricious because the Department's explanation was inadequate and lacked support in the record.

Under the Administrative Procedure Act, when an agency denies a petition for rulemaking it is obligated to give notice and an explanation. 5 U.S.C. § 555(e). The explanation need not be exhaustive. All that is required is "a brief statement of the grounds for denial." *Id*. Because an agency's denial of a petition for rulemaking is akin to an exercise of prosecutorial discretion, judicial review is "limited" and "deferential." *Massachusetts v. EPA*, 549 U.S. 497, 527–28 (2007) (quoting *Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)). "[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities" and thus to determine its own regulatory agenda. *Mass. v. EPA*, 549 U.S. at 527.

Here, the Department adequately explained why it denied the request for rulemaking. FlyersRights's petition for rulemaking presented two arguments in favor of a more robust notice regime: that the airlines were not meeting their obligations under the Montreal Convention and that there was widespread consumer confusion regarding passengers' rights to compensation in the event of delay. The Department's explanation responded to both of FlyersRights's concerns.

First, the Department found that airlines were fulfilling their obligations under the Montreal Convention. Specifically, it reviewed airlines' contracts of carriage and found that they gave "adequate notice regarding the availability of compensation for delays." The Montreal Convention requires only that "passenger[s] shall be given written notice to the effect that where this Convention is applicable it governs and may limit the liability of carriers in respect of … delay." Montreal Convention, art. 3(4). The record includes the contracts of carriage from several major airlines, each of which includes language to that effect. This amply supports the Department's

conclusion that the airlines have satisfied their notice obligations under the Montreal Convention.

The Department's finding that there was insufficient evidence of consumer confusion to warrant a rulemaking was also supported. FlyersRights presents some evidence of consumer confusion, citing both its interactions with passengers and media reports. But the Department has "broad discretion to choose how best to marshal its limited resources and personnel." *Mass. v. EPA*, 549 U.S. at 527. Determining whether this quantum of evidence of consumer confusion – meaningful but not overwhelming – warrants a rulemaking falls within the Department's discretion. The fact that the Department was already engaged in a separate rulemaking process addressing many of the concerns raised by FlyersRights further strengthens the Department's position. *See, e.g.*, *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 921 (D.C. Cir. 2008).

The petition for judicial review is therefore denied.

*So ordered.*