# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 15, 2021          Decided July 26, 2022

No. 20-1520

ARCHER WESTERN CONTRACTORS, LLC,
PETITIONER

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION AND
FEDERAL AVIATION ADMINISTRATION,
RESPONDENTS

On Petition for Review of an Order
of the Federal Aviation Administration

*Jonathan J. Straw* and *Steven D. Meacham* argued the causes for petitioner. On the briefs was *Larry W. Caudle Jr.*

*Corinne A. Niosi*, Senior Trial Counsel, U.S. Department of Justice, argued the cause for respondent. With her on the brief was *Brian M. Boynton*, Acting Assistant Attorney General.

Before: ROGERS and WALKER, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

2

WALKER, *Circuit Judge*: The Federal Aviation Administration hired Archer Western Contractors to build air traffic structures for an airport in Las Vegas. Archer completed the work, but there was some turbulence along the way. Archer now challenges the FAA's resolution of three contract disputes.

On the first dispute, the FAA said that Archer waited too long to challenge the FAA's failure to provide an equitable adjustment for a modification to the contract. For the second dispute, the FAA said that Archer's claim regarding contract modifications' "cumulative impact" was also untimely. As for the third dispute, the FAA found that Archer had failed to install proper rectangular airducts.

We hold that the FAA erred in dismissing as untimely Archer's failure-to-provide-an-equitable-adjustment claim. We agree with the FAA on the other two issues.

I

Archer built an air traffic control tower, a terminal radar approach control building, a parking garage, and a guard shack at what was then called McCarran International Airport in Las Vegas. Over the course of the multi-year construction process, the FAA repeatedly changed the work that it had hired Archer to perform. Those contract modifications sometimes required Archer to stop work and incur delay costs.

After one of the delays, Archer requested an "equitable adjustment," which is the compensation that the parties' contract requires the FAA to pay Archer when contract changes "increase . . . the cost of, or time required for performing the work." JA 136.

In December 2013, the FAA formally denied Archer's requested equitable adjustment, opting instead to unilaterally adjust the contract and award Archer less for the delays than it asked for. A year and four months later, in April 2015, Archer filed a notice of contract dispute with the Office of Dispute Resolution for Acquisition (ODRA), which is the FAA's dispute-resolution tribunal. The notice listed first among its claims the FAA's breach of contract for "Failure to Provide Equitable Adjustment for Significant Design Modification." JA 533.

Archer also brought other claims to the ODRA, including one related to its HVAC ductwork. Archer installed two types of airducts — round and rectangular. After installation, the contractually required antimicrobial coating in the round ducts began to flake off. There was also evidence of inadequate adhesion in the rectangular ducts. In response, the FAA rejected all the ducts as non-compliant with the contract and required Archer to replace them. Because Archer thought only the round ducts needed replacing, it sought reimbursement for the cost of replacing the rectangular ducts.

Four years later, in 2019, the ODRA received notice of a cumulative-impact claim. According to Archer, the FAA's successive, significant changes to the contract rippled out to decrease the efficiency of the entire project. That cumulative impact, said Archer, generated additional, compensable costs, even for unchanged work.

The ODRA dismissed Archer's failure-to-provide-an-equitable-adjustment claim as untimely, relying on contractual and regulatory provisions that require filing a claim within two years of its accrual. It reasoned that Archer's claim accrued back in December 2012 when the FAA proposed the relevant contract change, not in December 2013 when the FAA denied

Archer's requested equitable adjustment. Recall that Archer filed its failure-to-provide-an-equitable-adjustment claim in April 2015.

In addition, the ODRA dismissed Archer's cumulative-impact claim as untimely because it had been raised for the first time in 2019, several years after the closing of the two-year window for filing claims.

Finally, the ODRA found that the FAA had reasonably rejected all of the rectangular airducts in addition to the defective round airducts.

The FAA adopted the ODRA's findings and recommendations in a final order. Archer then petitioned this Court for review. *See* 49 U.S.C. § 46110.

II

"Our review is confined to determining whether the FAA's order adopting the ODRA's findings and recommendations is arbitrary or capricious or contrary to law." *Multimax, Inc. v. FAA*, 231 F.3d 882, 886 (D.C. Cir. 2000); *see also* 5 U.S.C. § 706(2)(A) (arbitrary or capricious standard). The FAA falls short of that standard when its decision "is not supported by substantial evidence" or when it "has made a clear error in judgment." *Multimax,* 231 F.3d at 886 (cleaned up).

A

We begin with the first of Archer's claims — that the ODRA, and thus the FAA, incorrectly dismissed as untimely Archer's claim for "Failure to Provide Equitable Adjustment for Significant Design Modification." JA 533.

5

We agree with Archer.

Government contracts often require the government agency to compensate the contractor when the agency's modifications to the contract cost the contractor time or money. That compensation is called an equitable adjustment. Archer's contract with the FAA requires the FAA to make an "equitable adjustment" when certain unexpected changes to the contract "increase . . . the cost of, or time required for performing the work." JA 136.

Government contracts also often provide for the adjudication of disputes that might arise between the agency and the contractor. In Archer's contract with the FAA, the contract said of equitable adjustments that the "[f]ailure to agree to any adjustment shall be a dispute." JA 137.

Finally, when disputes like that arise, government contracts often require a contractor to file claims based on those disputes in a certain forum and by a certain time. In Archer's contract with the FAA, that forum is the "dispute resolution system at the" ODRA. JA 133. And that time is "within two (2) years of the accrual of the contract claim involved." JA 133; *see also* 14 C.F.R. § 17.27(c) ("A contract dispute against the FAA shall be filed with the ODRA within two (2) years of the accrual of the contract claim involved."). FAA regulations specify that a claim accrues when "all events relating to a claim have occurred, which fix liability . . . and permit assertion of the claim." 14 C.F.R. § 17.3(b).

So to sum up so far, under the terms of Archer's contract with the FAA, Archer is entitled to an equitable adjustment if a contract modification by the FAA costs Archer time or money. The parties' failure to agree to that equitable adjustment is a contract dispute. And a claim based on that

dispute must be filed with the ODRA within two years of the claim's accrual.

That's what happened here. After the FAA cost Archer time by changing the work it required, Archer requested an equitable adjustment. The FAA denied that request for an equitable adjustment in December 2013. At that point, the claim accrued because it was then that "all events relating to a claim have occurred, which fix liability . . . and permit assertion of the claim." 14 C.F.R. § 17.3(b). Then, a year and four months later, in April 2015, Archer filed a claim with the ODRA for what it labeled the FAA's "Failure to Provide Equitable Adjustment for Significant Design Modification." JA 533. In it, Archer noted the FAA's contractual obligation "to make an equitable adjustment upon submittal of a proposal" by Archer for qualifying costs. JA 533. It referred to the contract's changes clause, provision 3.10.1-16, which defines as a dispute the "[f]ailure to agree to any adjustment." JA 136-37.

Archer's claim (in April 2015) for the FAA's failure to provide an equitable adjustment was timely because it was filed within two years of the FAA's denial of the equitable adjustment (in December 2013).

The FAA says Archer's failure-to-provide-an-equitable-adjustment claim accrued before December 2013. But that is precluded at least by the contract and litigating positions before us. In this situation, a claim for the FAA's failure to agree to an equitable adjustment cannot accrue until the FAA fails to agree to the equitable adjustment. Only then can it be said that "all events relating to [the] claim have occurred, which fix liability . . . and permit assertion of the claim." 14 C.F.R. § 17.3(b). And the FAA does not dispute that it was in

December 2013 that the FAA and Archer failed to agree on an equitable adjustment.[1]

To the extent the FAA suggests that the regulation defining accrual, 14 C.F.R. § 17.3(b), can redefine the accrual period for the contract's failure-to-agree dispute, it is incorrect. Even if we assume that the FAA is right — that pursuant to 17.3(b), denial of a request for an equitable adjustment was "not a prerequisite to accrual or the filing of a contract dispute," — the parties entered into their contract before that regulation went into effect, so the contract controls. *See* 14 C.F.R. § 17.27(c) ("If an underlying contract entered into prior to the effective date of this part provides for time limitations for filing of contract disputes with the ODRA, which differ from the aforesaid two (2) year period, the limitation periods in the contract shall control over the limitation period of this section."). The contract provided that Archer could file a dispute if the parties "[f]ail[ed] to agree to any adjustment." So a claim for the FAA's failure to agree to an equitable adjustment could not accrue until then.

The FAA's brief is replete with the dates of other disputes between it and Archer. But those are not the disputes that matter. Perhaps if Archer had brought a constructive-change-of-contract claim, the FAA could argue that *that* claim accrued in December 2012 when the FAA proposed changes to Archer's contract. And perhaps if Archer had brought a claim for delay, the FAA could argue that *that* claim accrued in January 2013 when Archer told the FAA it was stopping work

---

[1] Because the FAA does not argue for an earlier date on which it believes the parties first "failed to agree" on an equitable adjustment, we do not decide whether a party's claim for "failure to agree" could accrue at some point before a *formal* rejection of a request for an equitable adjustment.

or in February 2013 when Archer began tracking costs and delays.

But all of that is beside the point. Archer does not ask us to review the FAA's adjudication of a constructive-change-of-contract claim or a delay claim. We are reviewing a failure-to-provide-an-equitable-adjustment claim. And that claim was timely filed only one year and four months after it accrued — well within the two-year window for Archer to file a claim.

B

Next, we discuss Archer's second claim — that the ODRA, and thus the FAA, incorrectly dismissed as untimely Archer's cumulative-impact claim for the synergistic effect of multiple contract modifications on the unchanged remainder of the contract.

We agree with the FAA.

Archer's contract requires that disputes filed with the ODRA "shall contain . . . [a] detailed . . . statement . . . of the legal grounds for the contractor's positions regarding each . . . count of the contract dispute (i.e., **broken down by individual claim item**)." JA 133 (emphasis added); *see also* 14 C.F.R. § 17.27(a) (disputes "should contain . . . [a] detailed . . . statement . . . of the legal grounds underlying the contract dispute, broken down by individual claim item"). So to bring a cumulative-impact claim, Archer needed to give a statement of the legal grounds for that specific claim.

Archer did nothing like that within the two-year window. It failed to list a cumulative-impact claim as an "individual claim item" in the notices it filed with the ODRA. JA 133. In

fact, Archer has not argued that it mentioned "cumulative impact" — or a synonym for it — in those notices at all.

At oral argument, Archer said that its "cumulative impact claim arises from all the facts from all the counts." Transcript of Oral Argument at 8:15-16. That is not good enough — not when the contract requires that claims be "broken down by individual claim item." JA 133. The FAA cannot be expected to divine — from vague references by Archer, nested within its other claims — a nuanced cumulative-impact claim for costs associated with unchanged work, which are not directly traceable to an individual disruption, are not readily foreseeable, and are not easy to calculate.

Archer needed to separately allege a claim for cumulative impact within two years of that claim's accrual. Instead, the ODRA did not receive notice of Archer's cumulative-impact claim until 2019. JA 118. That was well past the contract's two-year limit for filing a claim. The FAA was therefore correct to dismiss Archer's cumulative-impact claim as untimely.

## C

We turn to the last of Archer's claims — that the FAA incorrectly rejected the rectangular airducts that Archer installed.[2]

Here again the FAA prevails.

We will not disturb an agency's factual finding when "substantial evidence" supports that finding. *City of Santa*

---

[2] To be precise, Archer installed the airducts through subcontractors Gallagher-Kaiser Corporation and Liberty Duct.

*Monica v. FAA*, 631 F.3d 550, 554 (D.C. Cir. 2011) (citing 49 U.S.C. § 46110(c)).  Substantial evidence means "more than a scintilla" of evidence.  *Town of Barnstable v. FAA*, 740 F.3d 681, 687 (D.C. Cir. 2014) (cleaned up)).  So even when the record is "unclear," it's enough for the agency to rely on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pham v. National Transportation Safety Board*, 33 F.4th 576, 581 (D.C. Cir. 2022) (cleaned up).  An agency's "conclusion may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view."  *Western Air Lines, Inc. v. Civil Aeronautics Board*, 495 F.2d 145, 152 (D.C. Cir. 1974).

The parties' contract required an antimicrobial coating to "form the interior surface of the duct[s]."  JA 125-26.  As Archer admitted at oral argument, coating that flakes would violate that contract.  Because Archer acknowledges that the round ducts were flaking, it agreed that many of them needed to be replaced.  However, Archer maintains that the coating's adhesion on the rectangular ducts was sufficient and thus that the FAA should not have required Archer to replace them.

Substantial evidence supports the FAA's finding that the antimicrobial coating on the inside of Archer's rectangular ducts would likely not adhere sufficiently over time.  The FAA based its conclusion on several findings, including the presence of oil in the rectangular ducts due to a failure to properly clean the ducts before the coating was applied.  The evidence also included testing that showed 17 instances of an adhesion rating of 0 on a scale where 0 is the worst score.  And the evidence included flaking in the turning vanes of the rectangular ducts.  Those are among the reasons the FAA's expert testified that, with the information the FAA had, he would probably have

made the same decision to reject and replace the rectangular ducts.

We need not decide whether any one of those pieces of evidence constitutes substantial evidence on its own. Together, they are enough.

First, take the oil found in the rectangular ducts. The round ducts had oil because they had been poorly cleaned. That oil caused extensive flaking in the round ducts, which were made in the same place and by the same manufacturers as the rectangular ducts. Although there was less oil in the rectangular ducts, the FAA found there was enough oil in them to indicate that the problem that plagued the round ducts would also plague the rectangular ducts. That reasonable finding was supported by an expert's testimony that the presence of even small amounts of oil could lead to variability in coating adhesion.

Second, look at the adhesion test scores. Although some of the spot-tested rectangular ducts showed acceptable adhesion levels — the parties dispute how many — a significant number (17) received the lowest grade possible (0). Those results came from the same test that was used by the company Archer hired to investigate the flaking, by that same company when Archer's subcontractor hired it, and by the manufacturer of the antimicrobial coating.

Third, consider the flaking in the turning vanes of the rectangular ducts. Turning vanes are components of airducts that direct airflow around corners. It is far from unreasonable to suspect that flaking there bodes poorly for the adhesion in the rest of the rectangular ducts.

12

For each of those three categories of evidence, Archer has a ready response. It notes that there was less oil on the rectangular ducts than on the circular ducts. It argues that the adhesion tests were taken in an improper way and applied a grading standard that was too rigorous. And it adds that the turning vanes could have been replaced without removing the main parts of the rectangular ducts.

But those arguments against the FAA's view merely show "a plausible alternative interpretation of the evidence" that "would support a contrary view." *Western Air Lines*, 495 F.2d at 152. They do not eliminate the "relevant evidence" that would allow "a reasonable mind" to accept the FAA's view "as adequate to support" its factual "conclusion." *Pham*, 33 F.4th at 581 (cleaned up). It is not our place to say how much oil is enough oil to portend a flaking problem, which testing method is the most accurate, or whose testing standard is the most fair.

In short, there is substantial evidence that the antimicrobial coating failed to sufficiently adhere to the rectangular airducts. And because Archer concedes that the FAA could reject the airducts if the antimicrobial coating did not "form the interior surface of the duct[s]" as required by the contract, JA 125-26, the FAA was not arbitrary and capricious when it required Archer to replace the rectangular ducts.

\* \* \*

We grant the petition in part and deny it in part: We vacate the FAA's order only as to its dismissal of Archer's first claim for failure to provide an equitable adjustment. The other challenged aspects of the FAA's order are not arbitrary and capricious.

*So ordered.*