# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2025     Decided November 14, 2025

No. 24-1358

SOUTHERN AIRWAYS EXPRESS, LLC,
PETITIONER

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION AND SEAN
P. DUFFY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF
TRANSPORTATION,
RESPONDENTS

———

On Petition for Review of an Order
of the U.S. Department of Transportation

———

*Kenneth S. Nankin* argued the cause and filed the briefs for petitioner.

*Erin D. Hendrixson*, Senior Trial Attorney, U.S. Department of Transportation, argued the cause for respondents. With her on the briefs were *Robert B. Nicholson* and *Steven J. Mintz*, Attorneys, U.S. Department of Justice, *Gregory D. Cote*, Acting General Counsel, U.S. Department of Transportation, *Charles E. Enloe*, Assistant General Counsel, U.S. Department of Transportation, and *Peter J. Plocki*, Deputy Assistant General Counsel, U.S. Department of Transportation.

Before: HENDERSON and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 1978, Congress passed the Airline Deregulation Act, Pub. L. No. 95-504, amending the Federal Aviation Act of 1958, Pub. L. No. 85-726, to significantly limit federal regulation of airline prices, routes, and services. However, this deregulatory legislation raised concerns that "communities with relatively low passenger levels would lose service as carriers shifted their operations to serve larger and often more profitable markets." RACHEL Y. TANG, CONG. RSCH. SERV., R44176, ESSENTIAL AIR SERVICE (2018). To address this issue, Congress enacted the Essential Air Service ("EAS") program, 49 U.S.C. §§ 41731-46, "to ensure that small communities that were served by certificated air carriers before deregulation would continue to receive scheduled passenger service, with subsidies if necessary." *Id.*

This case concerns a challenge to an action taken by the U.S. Department of Transportation (the "Department" or "DOT") to implement the terms of the EAS program. In 2024, DOT selected SkyWest Airlines, Inc. ("SkyWest"), from among several applicants, to receive a federal subsidy to provide EAS for Morgantown, West Virginia. Order Selecting Air Carrier ("Final Order"), DOT Order 2024-9-18 (Sep. 20, 2024), *reprinted in* Joint Appendix ("J.A.") 106-15. Southern Airways Express, LLC ("Southern") now petitions for review of DOT's Final Order selecting SkyWest. Southern is a commuter airline that served as the EAS carrier for Morgantown from November 2016 until the commencement of SkyWest's term in December 2024.

In considering the applications from carriers seeking to serve as the Morgantown EAS provider, the Department weighed five statutory factors: (1) the reliability of the applicant; (2) the types of agreements "the applicant has made with a larger air carrier serving the hub airport"; (3) the community's preferences; (4) whether the carrier has a marketing proposal; and (5) "the total compensation proposed by the air carrier." 49 U.S.C. § 41733(c)(1)(A)-(D), (F). On September 20, 2024, after reviewing the competing applications, the Department selected SkyWest as the EAS carrier for Morgantown for a three-year term from November 1, 2024 through October 31, 2027. In support of its decision, DOT explained that "SkyWest's proposal aligns well with the air carrier selection criteria required for evaluation," finding that "SkyWest has a proven record of providing reliable EAS in markets around the country" and that its "codeshare agreement with United Airlines will give passengers broad access to the national air transportation system via United's extensive domestic and international network." Final Order at 4, J.A. 109.

Following the issuance of DOT's Final Order, Southern filed this action, pursuant to 49 U.S.C. § 46110, against the Department and the Secretary of Transportation to challenge DOT's decision in favor of SkyWest. Southern has asserted a cause of action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), claiming variously that the Department's Final Order should be set aside because it is arbitrary and capricious, not supported by substantial evidence, and in excess of statutory authority. In support of these claims, Southern has argued that the Department failed to demonstrate that it had meaningfully analyzed and weighed the applicable statutory decisional factors.

As a threshold matter, we agree with the parties that we have jurisdiction to review Southern's petition pursuant to the specific grant of jurisdiction to this court in 49 U.S.C. § 46110(a). The statute says, "a person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit . . . not later than 60 days after the order is issued." Southern's request for review of DOT's contested Final Order in favor of SkyWest, filed on November 15, 2024, was clearly a timely petition for review with respect to a matter covered by the explicit terms of § 46110(a).

On the merits, we are unpersuaded by Southern's arguments. The record in this case confirms that DOT made findings of fact with respect to the applicable statutory factors governing the EAS carrier selection process. Those findings are supported by substantial evidence in the administrative record. It is also clear that DOT reasonably weighed the evidence before reaching a judgment in favor of SkyWest to serve as the EAS carrier for Morgantown. In sum, DOT's findings and analysis in the Final Order are sufficient for this court to discern its reasoning and comprehend the permissible bases for its selection of SkyWest. We thus have no grounds upon which to overturn DOT's action.

Accordingly, for the reasons explained below, we deny Southern's petition for review.

## I. BACKGROUND

### A. *Essential Air Service Program*

As explained above, the EAS program ensures that eligible communities continue to receive a minimum level of scheduled air service even if they do not generate sufficient demand for carriers to cover the cost of servicing these communities. *See Mesa Air Grp. v. DOT*, 87 F.3d 498, 500 (D.C. Cir. 1996). The EAS program thus authorizes the Department to award federal subsidies to air carriers that are selected to provide essential air service to eligible communities. 49 U.S.C. § 41733(c).

EAS subsidies are awarded through a competitive bidding process, which allows the Department to keep subsidy costs in check and to switch carriers, when appropriate. *Essential Air Service*, U.S. DEP'T OF TRANSP. (Nov. 4, 2024), https://www.transportation.gov/policy/aviation-policy/small-community-rural-air-service/essential-air-service. When selecting among air carriers that are competing for an EAS subsidy, the Department must weigh, "among other factors," five statutory factors, as follows:

*First*, "the demonstrated reliability of the applicant in providing scheduled air service." 49 U.S.C. § 41733(c)(1)(A).

*Second*, "the contractual, marketing, code-share, or interline arrangements the applicant has made with a larger air carrier serving the hub airport." *Id.* § 41733(c)(1)(B). Interline agreements allow passengers to transfer flights across airlines without needing to recheck bags or re-check-in with the second carrier. Codeshare agreements offer passengers the same benefits as interline agreements. In addition, because they allow an airline to sell tickets under its code for flights operated by a second airline, codeshare agreements also offer passengers

a single point of contact to resolve service issues, and they allow customers to receive frequent-flier benefits from the second airline.

*Third*, "the preferences of the actual and potential users of air transportation at the eligible place, including the views of the elected officials representing the users." *Id.* § 41733(c)(1)(C). The Department formally solicits the views of the community as part of the air carrier selection process.

*Fourth*, "whether the air carrier has included a plan in its proposal to market its services to the community." *Id.* § 41733(c)(1)(D).

And *fifth*, "the total compensation proposed by the air carrier for providing scheduled air service under this section." *Id.* § 41733(c)(1)(F). Congress recently added the fifth "total compensation" factor as part of the FAA Reauthorization Act of 2024. Pub. L. No. 118-63, § 561(d), 138 Stat. 1025, 1215 (codified at 49 U.S.C. § 41733(c)(1)(F)).

There is a sixth statutory factor that is not applicable here because it only pertains to eligible places in Alaska. 49 U.S.C. § 41733(c)(1)(E).

## B.  *The Morgantown EAS*

The facts in this case are largely undisputed. We will recite them as they are presented in the administrative record. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

The Morgantown Municipal Airport is located approximately three miles northeast of Morgantown, West Virginia, and it serves north central West Virginia and the surrounding areas. Southern was scheduled to provide essential air services at Morgantown between November 2016 and October 31, 2024.

In May 2024, DOT solicited proposals for an air carrier to provide EAS for Morgantown, with or without a subsidy, for a new term beginning on November 1, 2024. In response, the Department received four potentially viable proposals from Southern, SkyWest, Boutique Air, Inc., and Hyannis Air Service, Inc. d/b/a Cape Air. A fifth proposal was submitted by Corporate Flight Management Inc., d/b/a Contour Airlines, but this application was dropped because it failed to meet certain requirements that are not at issue in the present action.

Southern's application proposed two options, both for service to Dulles International Airport and Pittsburgh International Airport on nine-seat aircrafts. The first option proposed nineteen weekly round-trip flights to Dulles and Pittsburgh and requested approximately $4.4 to $4.8 million in annual subsidies. The second option proposed twenty-six weekly round-trip flights to Dulles and twelve to Pittsburgh; this option requested approximately $4.6 to $5.0 million in annual subsidies. Southern's proposal also reflected the reliability of its service, its interline agreements with American Airlines, Alaska Airlines, United Airlines, and Hawaiian Airlines, and its marketing budget and plans.

Boutique Air and Cape Air each proposed service packages that were similar to the proposal offered by Southern, but they requested higher subsidies. Their proposals offered service to Dulles and Pittsburgh on eight- or nine-seat aircrafts as well as interline arrangements with major airlines, including American

and United. They each attested to their reliability and detailed marketing plans for the community.

SkyWest's proposal, in turn, was significantly different. It offered service to Dulles and Chicago O'Hare International Airport on 50-seat aircrafts, with a total of 12 round-trip flights per week. SkyWest also touted a codeshare agreement with United Airlines that would allow it to "operate United Express service to the Morgantown community." SkyWest Airlines' Essential Air Service Proposal for Morgantown, W.V. (July 5, 2024) ("SkyWest Proposal"), J.A. 96. It attested to the reliability of its service and articulated a marketing strategy in partnership with the community. SkyWest's requested subsidy, at approximately $6.0 to $6.9 million per year, was neither the highest nor the lowest among the applicants.

After receiving the proposals from interested carriers, the Department solicited comments from the Morgantown community. Morgantown assembled a committee that reviewed the proposals and recommended selecting SkyWest because the proposed service to Chicago and Dulles would provide the community with greater access to the national transportation system.

On September 10, 2024, Southern submitted comments concerning the Department's upcoming selection of an EAS carrier for Morgantown. Southern emphasized that it had proposed the least expensive service option and that the FAA Reauthorization Act of 2024 required the Department to consider the "total compensation proposed" by each carrier. *See* 49 U.S.C. § 41733(c)(1)(F). Southern also emphasized the reliability of its service at Morgantown, its four interline agreements, the fact that the Morgantown community did not reject Southern, and the fact that its plan included an itemized marketing budget. It did not call into question the reliability of

the other carriers or the strength of their proposals, other than the higher cost of their requested subsidies and the lack of detail in their marketing plans.

Ten days later, the Department issued its Final Order selecting SkyWest to serve as the next EAS carrier for Morgantown for a three-year term beginning on November 1, 2024. The Department addressed the five relevant statutory factors in turn, explaining that: (1) "SkyWest has a proven record of providing reliable EAS in markets around the country"; (2) its "codeshare agreement with United Airlines will give passengers broad access to the national air transportation system via United's extensive domestic and international network"; (3) the Morgantown community "expressed a preference for SkyWest's proposal"; (4) "SkyWest included a plan to market its services within the community"; and (5) "SkyWest's subsidy request falls within the competitive range of options," with two airlines proposing less expensive options and a third proposing a more expensive option. Final Order at 4, J.A. 109. "Considering the circumstances as a whole," the Department concluded that SkyWest was the best option, noting, in particular, SkyWest's consistent reliability, its codeshare arrangements, and the fact that it was the community choice. *Id.* at 4-5, J.A. 109-10.

On November 15, 2024, Southern petitioned this court for review, pursuant to 49 U.S.C. § 46110, and requested that the Final Order be set aside. Three days later, Southern filed an emergency motion asking this court to stay the Final Order pending review, to extend Southern's status as the EAS provider at Morgantown pending review, and to expedite briefing and consideration of the case. These motions were denied on December 12, 2024.

## II. ANALYSIS

### A. *This Court Has Jurisdiction to Review Southern's Petition*

Southern's petition for review invokes this court's jurisdiction under 49 U.S.C. § 46110(a). Section 46110 provides:

> **(a)** . . . [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . in whole or in part under this part [Part A, 49 U.S.C. §§ 40101-6507], part B [49 U.S.C. §§ 47101-534], or subsection (l) or (r) of section 114 [49 U.S.C. § 114] may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit . . .

> **(c)** When the petition is sent to the Secretary, . . . the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary[] . . . to conduct further proceedings.

49 U.S.C. § 46110(a), (c). A provision in the Tucker Act grants the Court of Federal Claims jurisdiction to hear an "action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Given these statutory provisions, a question might be asked whether, in a case of this sort, jurisdiction under 49 U.S.C. § 46110(a) and 28 U.S.C. § 1491(b)(1) are in conflict. We think not.

The parties in this case were asked to submit supplemental briefs addressing whether this case was properly brought pursuant to 49 U.S.C. § 46110(a) and whether 28 U.S.C. § 1491(b)(1) somehow displaces the grant of jurisdiction to this court in § 46110(a). The parties agreed that § 46110(a) clearly controls and authorizes this court to exercise jurisdiction over Southern's petition for review. Having reviewed the applicable case law and the parties' arguments, we agree.

It is telling that the Supreme Court has noted that jurisdiction under the Tucker Act is "'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988). On this view, jurisdiction under the Tucker Act obviously does not displace this court's jurisdiction over matters that fall within the express compass of 49 U.S.C. § 46110(a).

Section 46110(a) clearly applies to this case. It explicitly grants this court jurisdiction to review the type of order at issue here. The match between the actions at issue in this case and the language of § 46110(a) is undeniable. The Final Order was issued by the Office of the Secretary of Transportation pursuant to the Secretary's authorities under 49 U.S.C. §§ 41731-46, which are in Part A of Subtitle VII of Title 49. And Southern has "a substantial interest" in the Final Order as a directly aggrieved bidder. All of the requirements of § 46110(a) necessary to support jurisdiction in this case have been met.

Furthermore, this court has consistently held that it has jurisdiction to review cases that fall squarely within the text of § 46110(a). *See, e.g.*, *Lacson v. Dep't of Homeland Sec.*, 726 F.3d 170, 176-77 (D.C. Cir. 2013) (holding that this court has jurisdiction to review an order where § 46110(a) "specifically addresse[d] the type of order at issue" in the case); *Cmtys.*

12

*Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 683 (D.C. Cir. 2004) (holding that jurisdiction was proper pursuant to § 46110(a) to review an order concerning the funding of an airport project that was issued, in relevant part, pursuant to Part A). We have also assumed jurisdiction under § 46110(a) to review cases that involve contractual elements. *See, e.g.*, *Archer W. Contractors, LLC v. DOT*, 45 F.4th 1, 2-4 (D.C. Cir. 2022) (assuming jurisdiction under § 46110(a) to review the Federal Aviation Administration's resolution of three contract disputes); *City of Santa Monica v. FAA*, 631 F.3d 550, 551, 553 (D.C. Cir. 2011) (assuming jurisdiction under § 46110(a) to review a Federal Aviation Administration order concluding that the petitioner had violated contractual obligations to the federal government). Therefore, § 46110(a) provides a clear basis for this court to exercise jurisdiction over Southern's petition for review.

In sum, we agree with the parties that § 46110(a)'s grant of jurisdiction controls. Southern's action challenging the Department's Final Order is properly before this court.

**B.  *Standard of Review***

In reviewing this petition under § 46110, we uphold the agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), or unsupported by "substantial evidence," 49 U.S.C. § 46110(c). *See Ramsingh v. Transp. Sec. Admin.*, 40 F.4th 625, 631 (D.C. Cir. 2022). Our review of Southern's petition is confined to the administrative record as it existed at the time the Final Order was issued. *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981); *Camp*, 411 U.S. at 142.

This court "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). "But when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard." *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179-80 (2025). When applying the APA's deferential standard, the scope of review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "[A] court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty.*, 605 U.S. at 180 (citations omitted).

## C. *Southern's Substantial Evidence and Arbitrary or Capricious Claims Fail*

Southern's central contention is that the Final Order is arbitrary and capricious under the APA and not supported by substantial evidence under 49 U.S.C. § 46110(c). In particular, Southern claims that the Department mechanically recited the five factors in 49 U.S.C. § 41733(c)(1), but failed to demonstrate that it actually analyzed the factors or made appropriate findings in support of its claims. Because the "arbitrary and capricious" and "substantial evidence" standards involve overlapping inquiries, *Crooks v. Mabus*, 845 F.3d 412, 423 (D.C. Cir. 2016), we analyze these claims together.

Section 46110(c) provides that the Department's findings of fact are "conclusive" if they are "supported by substantial evidence." 49 U.S.C. § 46110(c). "The substantial evidence standard requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Town of Barnstable v. FAA*, 740 F.3d 681, 687 (D.C. Cir. 2014)

(internal quotation marks and citation omitted). Applying this test, the Department's findings of fact are conclusive if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion reached. *Archer W. Contractors*, 45 F.4th at 6 (citation omitted).

The Department's conclusions may still be arbitrary and capricious under the APA if the agency failed to establish and articulate "a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). Thus, an agency action "would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*. Beyond that, the court's only role is "to assure that the agency has given reasoned consideration to all the material facts and issues." *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970) (citations omitted).

As noted above, § 41733(c)(1) requires the Department to weigh five statutory factors when selecting an air carrier to provide essential air service for an eligible community. 49 U.S.C. § 41733(c)(1)(A)-(D), (F). We discuss each factor in turn and find that the Department's conclusions for each are supported by substantial evidence and not otherwise arbitrary or capricious. We then evaluate the Final Order as a whole and find that the Department's selection of SkyWest is "reasonable and reasonably explained" and, thus, survives review under the APA and 49 U.S.C. § 46110(c). *Seven Cnty.*, 605 U.S. at 180.

**1. The Department's Findings With Respect to the Statutory Factors Are Supported by Substantial Evidence and Not Arbitrary or Capricious**

*First*, the Department found that "SkyWest has a proven record of providing reliable EAS in markets around the country." Final Order at 4, J.A. 109. Our review confirms that there is nothing in the record to cast doubt on SkyWest's reliability. SkyWest attested to the reliability of its service. SkyWest Proposal at 1, J.A. 96 (explaining that SkyWest's aircrafts are "safe and reliable," that it has "well-timed schedules," and that it "will provide passengers with quality air service"). And, in the Final Order, the Department noted that SkyWest is subject to the Department's continuing requirement that an air carrier be "fit, willing, and able to provide reliable service," and "no information ha[d] come to the Department's attention" that would call SkyWest's fitness into question. Final Order at 6, J.A. 111 (citing 49 U.S.C. §§ 41737(b), 41738). Southern had the opportunity to dispute SkyWest's reliability in the comments it submitted to the Department, but it offered nothing to impugn the reliability of SkyWest's service record. These facts constitute substantial evidence in support of SkyWest's reliability. Moreover, § 41733(c)(1)(A) only directs the Department to consider "the demonstrated reliability of the applicant in providing scheduled air service" and not, for example, whether the applicant is the most reliable. 49 U.S.C. § 41733(c)(1)(A). Therefore, DOT's finding in favor of SkyWest was also rational in light of the evidence discussed and, thus, not arbitrary or capricious.

*Second*, the Department found that "SkyWest's codeshare agreement with United Airlines will give passengers broad access to the national air transportation system via United's extensive domestic and international network." Final Order at 4, J.A. 109. The administrative record confirms that SkyWest

proposed service for the Morgantown community through its codeshare agreement with United Airlines, SkyWest Proposal at 1, J.A. 96, and that SkyWest was the only carrier to offer a codeshare arrangement, Final Order at 3, J.A. 108. Southern does not contest that these findings are supported by the administrative record, and it does not doubt that the findings weigh heavily in favor of the Department's selection of SkyWest.

*Third*, the Department found that the Morgantown community "expressed a preference for SkyWest's proposal." *Id.* at 4, J.A. 109. The Morgantown community's letter of recommendation unambiguously endorsed SkyWest's proposal because it offered connections to "two airline hubs [that] will provide the community with greater use of the National Transportation System." Morgantown Municipal Airport Letter of Recommendation for EAS (Aug. 5, 2024), J.A. 98. Southern does not dispute the Morgantown community's clear preference for SkyWest, nor does it challenge the conclusion that this factor strongly weighs in favor of SkyWest's proposal.

*Fourth*, the Department found that "SkyWest included a plan to market its services within the community." Final Order at 4, J.A. 109. SkyWest's proposal clearly states that it "will actively partner with the community to market the service with a variety of promotions including print, digital, radio and online." SkyWest Proposal at 1, J.A. 96. Southern nonetheless contests the sufficiency of the Department's finding. Southern argues that the Department "provides no analysis as to SkyWest's marketing plan," including whether it is a "good plan," or how it compares to other proposed marketing plans. Pet'r's Br. 13. But the statute does not require this. Rather, the statute only requires that the Department consider "whether the air carrier has included a plan in its proposal to market its

services to the community." 49 U.S.C. § 41733(c)(1)(D). SkyWest did this. DOT was not required to analyze the particulars of any carrier's marketing plan or how it compared with other proposed marketing plans. This is hardly surprising. As explained above, the Department formally solicits the views of the community as part of the air carrier selection process, so any arguable deficiencies in a carrier's plan should likely come to light after a carrier interacts with the community. In any event, the Department's finding that SkyWest included a marketing plan is supported by substantial evidence and not otherwise arbitrary or capricious.

*Fifth*, addressing the total compensation factor, the Department found that "SkyWest's subsidy request f[ell] within the competitive range of options" and was "reasonable." Final Order at 4, J.A. 109. Southern again contests the sufficiency of DOT's analysis, doubting the reasonableness of the Department's selection of a "proposal costing almost one-third more than Southern's lowest-cost proposal." Pet'r's Br. 14. Southern's challenge is misguided. The statute only requires that DOT consider "the total compensation proposed by the air carrier for providing scheduled air service under this section." 49 U.S.C. § 41733(c)(1)(F). It does not require the Department to select the lowest bidder. Because the Department's Final Order confirms that it considered each proposed subsidy, *see* Final Order at 3, J.A. 108, and reasonably explained why SkyWest's proposed subsidy was acceptable, *see id.* at 4, J.A. 109, we are assured that the Department gave the total compensation factor sufficient and reasonable consideration. *See Flyers Rights Educ. Fund, Inc. v. DOT*, 957 F.3d 1359, 1363 (D.C. Cir. 2020) ("[T]he Department has broad discretion to choose how best to marshal its limited resources and personnel." (internal quotation marks and citation omitted)).

In sum, the Department's findings for each § 41733(c)(1) factor are supported by substantial evidence, rational in light of the relevant evidence, and reasonably explained.

### 2. The Department's Selection of SkyWest Is Reasonable and Reasonably Explained

Separate from the consideration of the individual statutory factors, Southern also claims that the Department's selection of SkyWest is, on the whole, arbitrary and capricious because the Department failed to explain how the statutory factors weighed and balanced in favor of SkyWest. In particular, Southern alleges that DOT's reliance on a "vague 'totality of the circumstances'" explanation is "legally inadequate" because all the Department did was "recite[] the factors and then combine[] them in an unexplained manner to arrive at its conclusion." Pet'r's Br. 16 (citations omitted). We disagree.

Under the deferential arbitrary and capricious standard, "[w]e will . . . uphold a decision of less than ideal clarity" as long as "the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43 (internal quotation marks and citation omitted). In this case, we can easily understand the Department's eminently reasonable bases for selecting SkyWest. The Department stated that it "consider[ed] the circumstances as a whole," as it was statutorily required to do, *see* 49 U.S.C. § 41733(c)(1), and concluded that "SkyWest's proposal aligns best overall with the selection criteria." Final Order at 4-5, J.A. 109-10. It then identified the three factors – reliability, codeshare arrangements, and the community's preference – that weighed most heavily in favor of its selection of SkyWest. *Id.* at 5, J.A. 110. Although the Department's explanation was succinct, its "rationale and its reasonableness can be perceived readily enough." *Xcel Energy Servs., Inc. v. FERC*, 41 F.4th 548, 557 (D.C. Cir. 2022).

To the extent that Southern also disputes the substantive reasonableness of the Department's selection of SkyWest, its claims are unfounded. As discussed above, the only role for the court is to "assure that the agency has given reasoned consideration to all the material facts and issues." *Greater Boston Television Corp.*, 444 F.2d at 851 (citations omitted). The Department made findings of fact establishing that SkyWest satisfied each statutory factor and then offered a brief explanation in support of its selection of SkyWest. That is sufficient to assure the court that the Department engaged in the required "reasoned consideration." Accordingly, we find that the Final Order is "reasonable and reasonably explained," *Seven Cnty.*, 605 U.S. at 180 (citations omitted), and, thus, not arbitrary or capricious.

**D.** *The Department Did Not Exceed Its Statutory Authority*

Finally, Southern claims that the Department exceeded its statutory authority by failing to consider the factors enumerated in the statute. *See* 49 U.S.C. § 41733(c)(1) (stating that the Department "shall consider" the decisional factors). This in-excess-of-statutory-authority claim is plainly meritless. Indeed, the argument merely repackages some of the other arguments raised by Southern that we have already rejected in the earlier sections of this opinion. Therefore, we will not linger long in our discussion of this issue.

Southern concedes that "when a statute requires agencies to consider particular factors, it imposes upon agencies duties that are essentially procedural. The only role for a court is to [e]nsure that the agency has considered the factor." *Getty v. Fed. Sav. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986) (cleaned up). However, Southern urges that "[s]tating that a factor was considered[] . . . is not a substitute for

considering it." Pet'r's Br. 12 (quoting *Getty*, 805 F.2d at 1055). This is a hollow claim in light of the record in this case.

As discussed in the preceding sections, the Department made findings of fact with respect to each statutory factor and explained why SkyWest prevailed when all of the factors were weighed. Southern attempts to analogize the Department's treatment of the statutory factors here to the impermissibly cursory treatment the agency gave in *Getty*. In *Getty*, the agency attested to the fact that it had considered a required statutory factor, but it only offered a "boilerplate recitation" of the factor itself. 805 F.2d at 1055. In short, there was "no evidence that [the agency] paid any attention" to the factor. *Id.* at 1056. That is not what happened in this case.

In this case, the Department's analysis is clear, and it shows that all of the carriers that applied to serve as the EAS carrier for Morgantown were given full and fair consideration with respect to the applicable statutory factors and as against each other. It was not necessary for the Final Order to be lengthy to convey the Department's meaning on each point and to show that the Department's judgments were supported and reasonable. *See M2Z Networks, Inc. v. FCC*, 558 F.3d 554, 560 (D.C. Cir. 2009) ("Though not lengthy, the Commission's order in this case was neither a boilerplate recitation of the required language nor a passing reference without any reasoning."). Therefore, we are satisfied that, in selecting SkyWest, the Department properly fulfilled its statutory obligation.

**III. Conclusion**

For the foregoing reasons, we deny Southern's petition for review.

*So ordered.*